## THE LEONARD J. BUSBY.

### (Circuit Court of Appeals, Second Circuit. April 10, 1917.)

### No. 217.

COLLISION ⊂⊃105—OVERTAKING VESSELS—NEGLIGENT NAVIGATION.

Findings made by the trial court, which heard the witnesses, on conflicting evidence, that one of two tugs was the overtaking vessel, and was solely in fault for bringing her tow alongside into collision with and sinking the other tug, while attempting to cross under her stern in the East River, *held* sustained by the weight of the evidence.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by Henry Crew and others, owners of the steam tug William F. Reed, against the steam tug Leonard J. Busby; the Wright & Cobb Lighterage & Transportation Company, claimant. Decree for libelant, and claimant appeals. Affirmed.

The District Court adjudged the Leonard J. Busby, as the overtaking vessel, solely at fault for sinking the William F. Reed, on the afternoon of May 5, 1915, by bringing the starboard corner of the scow which she was towing into collision with the stern of the Reed and later by bringing the starboard side of the Busby, near the bow, into collision with the Reed. The court awarded the damages to the Reed, including interest and costs, at $3,756.94. The members of the crew were awarded $135 for loss of personal effects.

The following is the opinion of Learned Hand, District Judge, in the lower court:

This case presents a choice between two versions in the account of a collision which occurred in the East River about 1,000 feet or 1,500 feet off the New York shore and opposite either Pier 4 or the Barge Office. The Busby was a tug of 96 feet water line, with 350 horse power, having on her starboard hand a light barge in tow of about the same length as she. The Reed was a light tug about 50 feet long, with 75 horse power. The Busby was bound from Pier 1, North River, to Dow's Stores, Pacific street, Brooklyn; the Reed from the coaling pier at Communipaw to Wallabout Bay. The weather

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was clear, the tide in the strength of the ebb, the time 5:30 p. m., May 5, 1915. The Reed was further out stream.than the Busby, and the contact was between the starboard bow of the barge and the port quarter of the Reed. The first.contact threw the Reed hard to port, and brought her port bow into contact with the stern of the Busby, listing her violently to starboard, so that her engine room filled and eventually sank. So far the two versions coincide.

The Reed's account is that she was the overtaken vessel, that she held her course around the Battery about 1,000 feet off, and when opposite Pier 4 got one whistle from the Busby, which, being faster, notwithstanding her tow, was creeping up inside her about 75 feet away. At the time of the blowing, the Busby hardaported to go under the Reed's stern, but by miscalculation struck her about 10 feet forward of her fantail. The Busby's account is that she was the overtaken vessel, and was between Governors Island and the Battery, about 1,500 feet off the New York shore; that the Reed came up on her starboard hand and attempted without signal to cut across her bows up the East River. The wreck was subsequently found somewhere on a line between the north end of Staten Island ferry rack and the ordnance wharf on Governors Island; the Reed putting it about 800 feet from the New York shore, and the Busby about the same distance from the Governors Island shore. The difference between the two locations is about 800 feet.

Very much depends in this case upon the place where the collision actually occurred, because, if it was where the Reed says, it is highly improbable that she tried to cut across the Busby's bows, and highly probable that the Busby, which had reached the proper place to port and bear away across the tide to Pacific street, should have tried to go under the Reed's stern. If, on the other hand, the collision occurred between the ordnance wharf and the Barge Office, nearer Governors Island than New York, it is highly improbable that the Busby should have ported at all, and reasonably probable that the Reed, if overtaking should have tried to cross her bows. The testimony, as usual, presents a hopeless conflict in observation, even that of the disinterested witnesses. It must be remembered for the crews, nevertheless, that there is a genuine delusion which accounts for much arising from the instinctive habit of attributing all the relative motion of two moving bodies to the body being observed, and of supposing the spectator to be himself still. Thus the crew of the Busby might well think their own sheer to starboard was an effort of the Reed to cut their bows, and the crew of the Reed that their sheer to port was an effort of the Busby to go under their stern. I confess that the testimony as to which was the overtaking vessel seems more difficult to harmonize upon that theory.

I believe the collision to have happened about where the Reed says, for the following reasons: The tug was well out in the stream, far enough to get much of the force of the ebb which runs at that place in midchannel at about 2 miles an hour. The deckhand of the Reed who was at the wheel, says that she floated for 10 minutes after she was struck, and he is not contradicted, except by the master of the Busby, who says she sank "pretty nearly immediately." This conclusion, itself rather vague, is, however, checked by a subsequent bit of his own testimony, which seems to me to be more likely to be accurate. He passed the spot some days later, and then found a derrick, which raised the tug, anchored at a point 2,200 feet or 2,300 feet from the place of collision. Now, we know that the derrick was anchored only once, and that after the tug had been located, and then directly over where she was found. It is not likely that the Busby's captain should have mistaken the derrick for a barge, which was anchored in several.places until the tug was located. The range of this location all parties agree upon, but about the spot upon the range they differ. I can only say generally that it was not far from the center of the channel on that line; the channel itself being about 2,300 feet or 2,400 feet wide. If the master of the Busby was right, the collision was at least 2,000 feet upstream from this point, which would be a little more than the distance the tug would float in 10 minutes on the full ebb. A point 800 feet or 1,000 feet off Pier 4 is not much over 1,000 feet from the place where the tug was found. Thus, even assuming that the tug floated· only 5 minutes, and was found, not 2,200 feet, but 1,100 feet from the collision, we must place the

collision up the East River and about where the Reed says. In order to place it where the Busby says, we must suppose that it sank at once, which contradicts all the testimony, except the Busby's master's phrase, "pretty nearly immediately," just considered. I do not believe she floated for 10 minutes, or over 2,200 feet, but I do believe she floated for a little while. This is borne out further by the testimony of at least one of the Busby's witnesses, who swore that they rescued the Reed's master from the top of the pilot house, showing that he had at least time to clamber up there, and did not have to jump at once for his life. I think the tug probably floated for 3 or 4 minutes to the southwest on the ebb.

Further considerations move me to place the collision as the Reed says. She was bound for Wallabout against the ebb, and would have cut the Battery as close as safe, and perhaps closer; else she would have to make a wider swing with the whole force of the ebb on her port bow. She gave enough space for shipping to pass her port to port coming down, but I can see no reason why her course should have sagged so far to the southward as the position ascribed to the collision by the Busby required. We may assume she would choose as short a distance as was compatible with safety under those conditions.

Coming now to the Busby, a similar reasoning obtains. The course she says she took would give her the full force of the ebb between Governors Island and the Battery, and would require her to cross it when she got into the Buttermilk Channel current. Crossing it would involve heading up into it and being carried down by it. If, on the other hand, she followed the route implied by the Reed's version, she would hold a course around the Battery until she got about to Pier 4, when, by porting, she could take advantage of the ebb to carry her down as she crossed till she reached Pacific street. She must breast the ebb then only until she ported, and even so probably with perceptibly less strength of tide if only 800 feet off shore than in midstream. Her master gave no comprehensible statement of reasons for not adopting this route.

The combination of all these reasons makes me accept the Reed's location of the collision. As to the Busby's impartial witnesses, the policeman was certainly not clear, because he placed the barge on the Busby's wrong side. The two ticket "runners" did not see the collision; possibly they did see the tug as she floated back till she sank.

The relative speeds of the vessels it is impossible to determine, except to say that the Busby should have been quite able, with one empty barge, to exceed the speed of the smaller tug. The testimony as to this fact is, if taken alone, so wholly in conflict that it is impossible to form any reasonably safe conclusion.

One thing further seems to me not insignificant. The Busby did blow one whistle. She says it was to a tow coming down the East River at Pier 8 or 9, which is way up at Old Slip. At the time, by her own statement, she was to the westward of the ordnance dock and nearer the Governors Island shore. Of course such a story is absurd, as absurd as the explanation of the tug's being drawn in by suction. It seems to me that this conceded whistle, so stupidly explained, lends further color to the explanation of the Reed that the Busby was coming up behind, and meant to port and bear away from Brooklyn. At least no other tenable explanation is offered.

I find the Busby at fault, and the Reed not at fault. A decree will be entered to that effect.

Foley & Martin, of New York City (William J. Martin and George V. A. McCloskey, both of New York City, of counsel), for appellant.

Macklin, Brown & Purdy, of New York City (William F. Purdy, of New York City, of counsel), for appellees.

Before COXE, WARD, and ROGERS, Circuit Judges.

COXE, Circuit Judge. The crucial questions here are questions of fact which were carefully considered by Judge Learned Hand after

having seen and heard the witnesses. We see no reason to differ with him, but even if we did do so, we would hesitate to reverse his findings unless fully convinced that he was wrong. In the present case we think the weight of evidence is clearly to the effect that the Busby and not the Reed is responsible for the collision.

The decree is affirmed with costs.